*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATHAN CRAFT, <br><br> Petitioner, <br><br> v. <br><br> WILLIE BONDS, et al., <br><br> Respondents. | Civil Action No. 18-8620 (PGS) <br><br> **MEMORANDUM OPINION** |

**SHERIDAN, District Judge:**

Petitioner Nathan Craft, confined at the South Woods State Prison in Bridgeton, New Jersey, files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree possession of cocaine with intent to distribute, N.J. STAT. ANN. § 2C:35-5(b)(2) after pleading guilty in the Superior Court of New Jersey, Law Division, Monmouth County. At this time, the Court must screen the Petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases, to determine if the Petition should be dismissed because Petitioner is not entitled to relief.

The petition raises one claim: that certain evidence acquired by the police was obtained in violation of his Fourth Amendment rights. Attached to the Petition as exhibits are a partial transcript of the motion to suppress the results of the search, ECF No. 1-3; the decision by the New Jersey Superior Court, Appellate Division on direct appeal affirming the denial of the motion to suppress, ECF No. 1-4; and the order from the New Jersey Supreme Court denying the petition for certification, ECF No. 1-5. The appellate court summarized the facts as follows:

The arresting officer testified he was driving south on Hope Road in Tinton Falls when he noticed a tan Buick with tinted windows traveling in the same direction. The officer checked the Buick's license plate and learned the registered owner had a suspended license. The officer pulled the car over and approached the driver, later identified as defendant Nathan Craft.

In the course of speaking to the driver, the officer noticed the smell of marijuana, and asked defendant whether he had been smoking the drug. Defendant admitted he had smoked marijuana an hour or two earlier. The officer asked defendant to step out of the car and radioed his sergeant. The officer asked defendant whether he was armed, and if the officer could pat him down. Defendant said he was not armed and consented to a pat down. Noticing a bulge in one of defendant's pockets, the officer discovered a large wad of cash but no weapon. In response to the officer's question as to why he was carrying so much cash, defendant told the officer it was about $8000, which he had to pay bills. The officer returned the cash to defendant, and spoke to the sergeant who had arrived on the scene.

The officer approached defendant with a consent to search form, reviewed it with him and requested defendant's consent to search the car. The officer testified defendant refused to sign the form but told him he could search the car. The officer testified he spoke to defendant for about three to five minutes, making sure he had defendant's consent to search the car and trying to understand why, if defendant was consenting to the search, he was unwilling to sign the form.

The officer testified defendant took issue with the language of the form authorizing the police "to remove and retain any items of evidential value which they consider pertinent to their investigation." Specifically, defendant told the officer he had no objection to the officer searching his car, he just did not want the police to take his money.

After confirming with defendant that he understood he had the right to refuse the search, and that he was consenting to the search but would not sign the form, the officer signed and dated the form, noting that defendant "[r]efused to sign 11–1–11 5:54pm." Underneath the space provided for defendant's signature, the officer wrote, "gave permission[;] verbal consent[;] didn't want us to take money." The sergeant also signed and dated the form. On cross-examination, the officer conceded that although he was without basis to seize the cash when he handed it back to defendant after the pat-down, he knew if drugs were discovered in the car, he would seize the cash for forfeiture.

Following completion of the form, the officer searched the car and found part of a plastic bag sticking up between the cushions of the backseat. Inside was eighty-five grams of cocaine packaged in smaller bags. Defendant was arrested, his cash was seized, and he was transported to the police station where he was processed and released on his own recognizance after giving a statement.

> The detective who took defendant's videotaped statement also testified at the suppression hearing. He explained he was directed to conduct the interview, "because it's not every day that you ... have somebody say hey, search my car but I'm not going to sign the consent." After defendant executed the *Miranda* form, the detective asked him what had occurred during the course of the stop, whether he had consented to have his car searched, and why he refused to sign the form.
>
> On the videotape, which was played in court and authenticated by the detective, defendant described the stop very similarly to the way the officer had described it in his testimony. Defendant several times conceded he gave the officer permission to search his car. He explained he refused to sign the form, which he reviewed with the detective, because he "[did not] know the law," and the language of the form "was subject to interpretation." Defendant told the detective he did not understand the full ramifications of the clause that allowed the police to seize evidence, and he did not want the officer to take his $8000.
>
> When the detective pressed defendant as to why then had he consented to the search, knowing he had a right to refuse, defendant expressed the view that the officer was going to search no matter what defendant said. When the detective asked whether the Tinton Falls officer had said or done anything during the stop to indicate he was going to search defendant's car regardless of whether he got consent, defendant explained he based his belief on his and others' prior experiences. That comment led to an exchange in which the detective stressed that officers have to stop a voluntary search upon request and defendant expressing skepticism that any officer would ever do so. Defendant, who is black, told the detective, who is white, that their views on whether the police respected the rights of people pulled over in traffic stops likely differed because "we walk two different lives."

ECF No. 1-4 at 2-6 (alterations and omissions in original) (footnotes omitted); *see also State v. Craft*, No. A-1219-14T2, 2017 WL 1927864, at *1–2 (N.J. Super. Ct. App. Div. May 10, 2017).

The Appellate Division affirmed the trial court's decision to deny Petitioner's motion to suppress, holding that:

> Although there is no question but that "the scope of a consent search is limited by the terms of its authorization," *State v. Santana*, 215 N.J. Super. 63, 72 (App. Div. 1987), we cannot find that defendant somehow limited his unequivocal consent to search his car by his unwillingness to surrender the cash the detectives had already found in his pocket and returned to him. Neither are we aware of any requirement that would have the officer explain that if they found drugs in the car, they could lawfully seize the cash in his pocket, as well as his car, on the theory it was integral to or utilized in furtherance of illegal drug distribution, *see* N.J. STAT. ANN. § 2C:64–1a(2)-(3), even though aware he did not want police to take his money.

3

> Although defendant's consent ultimately led to the seizure of the cash, the cash was not seized pursuant to defendant's unequivocal consent to search his car.
>
> As for defendant's statement to the detective that he only consented because of his belief that the police would have searched anyway, we do not find it undermined defendant's objective acknowledgement "that he had a choice in the matter." *State v. Johnson*, 68 N.J. 349, 354 (1975). We are mindful of his concession to the detective that the Tinton Falls officers treated him with respect and made no attempt to coerce his compliance. A defendant's subjective perception that his consent was coerced will not vitiate an otherwise valid given consent to search

ECF No. 1-4 at 10-11; 2017 WL 1927864, at *3–4.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). Habeas Rule 4 requires a district court to examine a habeas petition prior to ordering an answer and "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." 28 U.S.C. § 2254 Rule 4. *See also Mayle v. Felix*, 545 U.S. 644, 656 (2005) ("Under Habeas Corpus Rule 4, if 'it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court,' the court must summarily dismiss the petition without ordering a responsive pleading."). Petitioner raises one ground for relief, asserting that "[b]ecause the state failed to establish that consent to search was freely and voluntarily given, the state court erred in denying [the] motion to suppress." ECF No. 1 ¶ 12. As such, he argues "[j]udgment should be vacated on grounds that consentless search violated 4th Amendment." *Id.* at 15.

Federal habeas review of Fourth Amendment claims is barred where state prisoners had a full and fair opportunity to litigate the claims in state court. *Stone v. Powell*, 248 U.S. 465, 494 (1976). The record submitted with the petition clearly shows that Petitioner had a full and fair review in the state courts of his Fourth Amendment claim. "An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the bar. . . . [Petitioner] is at most alleging that the Fourth Amendment claims were decided incorrectly . . . by the New Jersey courts, allegations which are insufficient to surmount the *Stone* bar." *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The United States Supreme Court held in *Slack v. McDaniel* that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." 529 U.S. 473, 484 (2000). This Court denies a certificate of appealability because jurists of reason would not find it debatable that dismissal of the petition as barred by *Stone* is correct.

An appropriate order follows.

_____
Peter G. Sheridan, U.S.D.J.

Date: 6/28/18